## CASSIDY v. TAYLOR BREWING & MALTING CO.

(Supreme Court, Appellate Division, Third Department.   January 14, 1903.)

1. AGENCY—EVIDENCE.

There is enough evidence to support a finding that D., who, at an execution sale, on behalf of defendant, the execution creditor, requested plaintiff to bid, and promised to hold him harmless, was authorized to make the promise, he having been a salesman of defendant, having attended the sale at defendant's direction, and delivered to the sheriff an indemnity bond, and having bid at the sale, and received the money arising therefrom, and defendant, in reply to a letter from plaintiff stating that he had been deprived of part of the property, and, on the representations of defendant and his agents, looked to it to save him from loss, having written a letter not denying the representations, or that they were authorized, and stating a readiness to stand good for any loss, if the goods plaintiff still had were not worth what was bid for all that were sold.

2. EXECUTION SALE—AGREEMENT TO HOLD HARMLESS—DAMAGES.

The agreement of the execution creditor at the sale to hold a purchaser harmless includes necessary expense of the purchaser in defending the title, where the obligor is requested, but fails, to make such defense.

Appeal from trial term.

Action by John Cassidy against the Taylor Brewing & Malting Company.   From a judgment on verdict for plaintiff, and from an order denying a new trial on the minutes, defendant appeals.   Affirmed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, FURSMAN, and CHESTER, JJ.

Harwood Dudley, for appellant.
M. D. Murray, for respondent.

KELLOGG, J.   The defendant sold, under execution against one Bogaskie, certain property claimed by defendant to be personal property, and at the sheriff's sale it was bid in by plaintiff for $210.   A part of the property so sold was afterwards adjudged to be realty, and title thereto did not pass to the purchaser.   There was evidence given upon the trial that the value of the property to which plaintiff took title under this sale was less than the sum bid.   In the action against plaintiff and others, in which it was adjudged that some portion of the property sold was real estate, the plaintiff expended in the employment of counsel and for witnesses the sum of $181.50.   The defendant had notice of this action, and was asked by plaintiff to make the defense.   The plaintiff in this action claims that, before he bid upon the property, defendant, through one of its agents who attended the sale, requested him to bid, promising to hold him harmless.   From the evidence given

¶ 2. See Indemnity, vol. 27, Cent. Dig. § 17.

upon the trial, the jury might properly have found that plaintiff was induced to bid by this promise of the agent; and the main question in the case is, was there sufficient evidence upon which the jury could find that this agent had authority from defendant to bind defendant by such a promise? It appears that the agent was a salesman of defendant; that he attended the sale at the defendant's direction, and delivered to the sheriff an indemnity bond; that he bid at the sale, and received the money arising from the sale. It also appears that afterwards the defendant received a letter from plaintiff's attorney, dated January 23, 1902, in which the attorney says that plaintiff had been deprived of a portion of the property by the foreclosure of a mortgage, and adds, "Upon the representations and inducements made to Mr. Cassidy by you and your agents, he looks to you to keep him harmless from all loss in the matter." To this letter defendant replied, February 11, 1902: "We have before us your letter of January 23d in relation to the Cassidy matter, as well as a report by our Mr. Doran (the agent attending the sale), who saw you and Mr. Cassidy's former attorney, Mr. Moore, in the Bogaskie suit. As we understand it, certain fixtures or chattels were seized by the then sheriff of Fulton county by order of an attachment sued out of the supreme court, and sold by him to satisfy our judgment. The price realized on such sale was $210.00, and the property was bought in by your client, Mr. J. Cassidy. This figure, of course, did not commence to represent the value of the goods sold, and when the court decided that the seized property, or a part of it, was real estate instead of personal property, and therefore deprived Mr. Cassidy of ownership of a part of it, he has not suffered to any great extent. However, we are willing to appraise the goods in his possession, and, if a competent appraiser finds that he suffered any loss, we stand ready to make good." The letter does not in terms or by implication deny the statement made in the letter of January 23d from the plaintiff's attorney, relating to representations and inducements made to Cassidy at the time of the sale, nor that such representations and inducements were authorized by defendant; and their failure to make a denial bears strongly upon the question as to whether the promise made by the agent to hold plaintiff harmless was not authorized. I think there was enough evidence upon this question to support the finding of the jury that the agent was authorized.

The only other question is as to the measure of damages. The learned court seems to have instructed the jury that plaintiff was not entitled to recover the value of the property of which he was deprived, but only the sum bid,—$210,—and the cost of defense of the action in which title to the property was determined, to wit, his counsel and witness fees, less the value of the personal property retained by plaintiff. The verdict was for $291.66, and apparently follows the instruction of the court in leaving out of consideration the value of the property of which plaintiff was deprived. The rule adopted by the court was most favorable to the defendant. On a breach of warranty of title it was held, in Rickert v. Snyder, 9 Wend. 416, that counsel fees paid out in defending the title are recoverable against the warrantor. And I do not find that the rule there declared has since been in any case departed from. The agreement to hold harmless must include such nec-

essary expense, especially where the obligor is requested to make such defense and fails to do so.   Westervelt v. Smith, 2 Duer, 449.

The judgment should be affirmed, with costs.   All concur.